1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

8

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

9

10 | **GERALD B. RHINEHART, an individual by** | **1:18-cv-01391-LJO-SAB**

**and through his Power of Attorney SUZANNE**

11 | **VILLANUEVA, and on behalf of similarly** | **MEMORANDUM DECISION AND**

**situated persons,** | **ORDER DENYING PLAINTIFFS'**

12 | | **MOTION TO REMAND**

| **(Doc. 9)**

13 | **Plaintiffs,**

| **MEMORANDUM DECISION AND**

14 | **v.** | **ORDER GRANTING DEFENDANT'S**

| **MOTION TO DISMISS IN PART**

15 | **GENWORTH LIFE AND ANNUITY** | **(Doc. 10)**

**INSURANCE COMPANY, a Virginia**

16 | **corporation,**

17 | **Defendant.**

18

19 | **I. <u>INTRODUCTION</u>**

20 Plaintiff filed a putative class action suit against Defendant on September 5, 2018, in the Merced

21 County Superior Court alleging that Defendant had actively engaged in selling insurance policies to

22 senior citizens that violate disclosure laws.  Defendant removed the case to this Court in October 2018;

23 Plaintiff filed a motion to remand the case to state court, and Defendant filed a motion to dismiss.  For

24 the reasons set forth below, Plaintiff's motion to remand is DENIED, and Defendant's Motion to Dismiss

25 is GRANTED in part:  Plaintiff's complaint is dismissed with leave to amend.

1

The complaint alleges unlawful sales practices by Defendant in failing to adequately include statutory disclosures in individual life insurance policies. According to Plaintiff, the California Insurance Code mandates that consumers of life insurance policies who are 60 years or older must receive a 30-day "free look" period, during which time a "Senior" can return the policy for a full refund of premiums. (Cmplt., ¶ 4 (citing Cal. Ins. Code § 10127.10).) California Insurance Code § 10127.10 requires notice of the "free-look" period to be given "on the cover page or policy jacket in 12-point bold print with one inch of space on all sides or printed on a sticker that is affixed to the cover page of the policy jacket . . . . " *Id.*

California Insurance Code § 10127.13 requires insurers selling life insurance policies to consumers who are 60 years of age or older to " . . . either disclose the surrender period and all associated penalties in bold 12-point print on the cover sheet of the policy or disclose the location of the surrender information in bold 12-point print on the cover page of the policy, or printed on a sticker that is affixed to the cover page or policy jacket." (Cmplt., ¶ 5 (citing Cal. Ins. Code § 10127.13).) Plaintiff alleges Section 10127.13 requires the cover page or jacket to disclose all penalties in full, or to "disclose the location of the surrender information" with particularity – it is not sufficient for the cover page of the policy to refer the reader to a "data page" that spans multiple pages or for the cover page of the policy to refer the reader to a page containing definitions of the term "surrender" or "surrender charge" if those definitions do not disclose the actual surrender charges. (Cmplt., ¶ 5 (citing *Rand v. Am. Nat'l Ins. Co.*, 717 F. Supp. 2d 948, 956 (N.D. Cal. 2010)).)

On January 11, 2011, when Plaintiff was 72 years old, Defendant issued a life insurance policy ("Rhinehart Policy") to him. (Cmplt., ¶ 15.) According to Plaintiff, neither the policy cover page nor the policy jacket contained disclosures regarding the 30-day free look period, and the cover page makes no reference to surrender charges. (Cmplt., ¶¶ 23-24.) Instead, the Rhinehart Policy's schedule of surrender charges appears at least seven pages into the policy. (Cmplt. ¶ 24.) Plaintiff alleges he would not have

purchased the Rhinehart Policy had he known there were surrender charges and penalties that would be imposed upon lapse or cancellation of the policy. (Cmplt., ¶ 25.)

Plaintiff alleges Defendant's standard practice for generating and providing policies to California senior citizens[1] was and is to provide improper notice in a manner that is non-compliant with California Insurance Code Sections 10127.10 and 10127.13. Plaintiff avers the improper notice by Defendant is intended to be less evident to California senior citizens than proper, code-compliant notice would be, and the improper notice is intended by Defendant to mislead seniors by directing them to the wrong page of the policy. (Cmplt., ¶ 26.)

Plaintiff alleges he and other putative class members did not know and could not reasonably have known of Defendant's illegal, unfair and deceptive business practices and could not have reasonably discovered the omissions or non-disclosures of Defendant's representations, advertising and similar documents until shortly before the filing of Plaintiff's complaint. (Cmplt., ¶ 27.) Plaintiff asserts that his attorney-in-fact was not aware of the policy issued to Plaintiff by Defendant until January 2018 when she discovered an old renewal notice for the policy among her father's papers. (*Id.*)

Based on these allegations, the complaint sets forth a claim for Unfair Business Practices pursuant to California Business & Professions Code §§ 17200, *et seq*. and a claim for Financial Elder Abuse pursuant to California Welfare & Institutions Code §§ 15600 *et. seq*. Plaintiff's prayer for relief seeks to enjoin Defendant from pursing the complained-of practices; for disgorgement and restitution of Defendant's "ill-gotten gains"; for an unspecified amount of special and general damages, for punitive and exemplary damages under the California Welfare & Insurance Code § 15657(a), California Civil Code § 1780(a)(4), and California Civil Code § 3294; for a constructive trust; reasonable attorney's fees and costs associated with the suit; and pre- and post-judgment interest. (Cmplt., ¶¶ 14-15.)

In October 2018, Defendant removed the complaint to this Court asserting subject matter

_____

[1] The terms "senior" and "senior citizen" refer to individuals 60 years of age or older. Cal. Ins. Code § 10127.10(g).

jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which states that district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action (as defined by § 1332(d)(1)) in which there is diversity of citizenship as set forth in § 1332(d)(2)(A)-(C). 28 U.S.C. § 1332(d)(2).

Plaintiff subsequently filed a motion to remand the case to Merced County Superior Court arguing Defendant had not established by a preponderance of evidence that the amount in controversy met the $5 million threshold required by § 1332(d). In opposition to the motion to remand, Defendant argued the surrender charges incurred on policies issued to the putative class since 2004 in addition to punitive damages and attorney's fees totaled more than $5.6 million and supported this argument with a declaration from its Lead Project Management Representative, Deborah Seamster, who attested to the calculation of the surrender charges. (Doc. 17-2, Seamster Decl.) In reply to this opposition, Plaintiff noted Seamster's declaration did not clearly identify on which type of policies the surrender charges were incurred and argued Defendant's calculation of surrender charges since 2004 was unsupported by any evidence the class period should be extended before 2011, the date Plaintiff's policy was issued.

To address Plaintiff's argument in this regard, the Court ordered Defendant to submit a supplemental declaration clarifying the type of policies on which the calculated surrender charges were incurred and delineating the surrender charges incurred in each year from 2004 to present, rather than presenting one cumulative amount of surrender charges. Defendant filed a supplemental declaration addressing these issues, and Plaintiff filed a sur-reply reasserting that calculating the surrender charges from 2004 to the present was unsupported by any evidence.

At the time Plaintiff filed a motion to remand, Defendant filed a motion to dismiss arguing Plaintiff's claims were barred by the applicable statutes of limitations. Plaintiff filed an opposition brief, and Defendant filed a reply brief. Both matters were taken under submission by the Court. For the reasons set forth below, Plaintiff's motion for remand is DENIED, and Defendant's motion to dismiss is

GRANTED in part and DENIED in part.

### III. <u>ANALYSIS</u>

**A.    Plaintiff's Motion to Remand**

Plaintiff seeks to remand this action to state court arguing the Court has no removal jurisdiction under CAFA because Defendant has not established by a preponderance of the evidence the jurisdictional threshold of $5 million has been placed into controversy by the complaint.[2]

**1.    Legal Standard**

CAFA provides "original jurisdiction" to the federal district courts to hear a "class action" if the class has more than 100 members, the parties are minimally diverse, and the matter in controversy "exceeds the sum or value of $5,000,000." 28 U.S.C. §1332(d)(2), (5)(B). A class action satisfying the CAFA standards which is originally filed in state court may be removed to federal court. 28 U.S.C. §1441(a). Different from the general presumption against removal jurisdiction in other types of cases, "no antiremoval presumption attends cases invoking CAFA." *Dart v. Cherokee Basin Operating Co., LLC v. Owens*, __ U.S. __, 135 S.Ct. 547, 554 (2014). Instead, Congress intended CAFA jurisdiction to be "interpreted expansively." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Pursuant to CAFA, the burden of establishing removal jurisdiction rests on the removing party. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006). Upon removal, a defendant need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold, and this allegation should be accepted if it is not contested by the plaintiff or questioned by the court. *Owens*, 135 S.Ct. at 554. If, however, "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence

---

[2] The parties do not dispute Plaintiff's complaint is a "class action" under CAFA, that the action involves more than 100 putative class members, and that minimal diversity exists – the citizenship of at least one putative class member is different from Defendant's citizenship.

5

whether the amount-in-controversy requirement has been satisfied." *Id.* Applying the preponderance of evidence standard, a defendant must establish "that the potential damage could exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (internal citation and quotation marks omitted).

### 2. Defendant's Calculations

In Count I of the complaint, Plaintiff and a putative class allege a violation of the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*, based on Defendants unlawful and unfair practices of failing to provide required disclosures in insurance policies sold to persons over the age of 60 pursuant to California Insurance Code §§ 10127.10 and 10127.13. As damages under Count I, Plaintiff and the putative class seek the return of "the full amount of money improperly collected," which includes "commissions and profits from the sale of life insurance policies, surrender charges and other fees, [and] income derived from penalties and fees." (Doc. 17, 5:6-8 (citing Cmplt., ¶ 51).) The putative class seeking damages under Count I is defined as "[a]ny California person or trust who purchased (including the owner, estate, trustee and/or beneficiaries of such persons or trust) a Genworth Life Insurance Policy and who was 60 years or older at the time of issuance." (*Id.* (citing Cmplt., 33).)

To measure the potential damages put "at issue" with respect to this claim, Defendant determined the amount of surrender charges incurred on life insurance policies it issued to the putative class from January 2004 to the present. This date range was selected because the complaint alleges the four-year statutes of limitations applicable to the claims of the putative class (and subclass) have been tolled by the discovery rule. The statutory requirements applicable to Plaintiff's claims became effective in January 2004. Because the complaint very specifically alleges *none* of the policies issued to the putative class or subclass contained the required notices, the putative class and subclass could extend from the date the statutory requirements applicable to Plaintiff's policy went into effect – i.e., January 2004.

Set out in the supplemental declaration of Deborah Seamster, a Lead Project Management Representative for Defendant, the life insurance surrender charges incurred on policies issued to the putative class were as follows:

| Year | Total Surrender Charges | Year | Total Surrender Charges |
|------|------------------------|------|------------------------|
| 2004 | $2,703 | 2011 | $466,665.89 |
| 2005 | $39,210 | 2012 | $515,647.02 |
| 2006 | $159,914.01 | 2013 | $479,607.13 |
| 2007 | $78,972.64 | 2014 | $365,299.33 |
| 2008 | $457,243.26 | 2015 | $433,697.98 |
| 2009 | $142,411.22 | 2016 | $1,109,979.80 |
| 2010 | $585,756.83 | 2017 | $199,716.01 |
| | | 2018 | $66,888.42 |
| | | **Total** | $4,187,985.85[3] |

(Doc. 22.)

Count II alleges a claim for financial elder abuse pursuant to California Welfare & Institutions Code §§ 15600, *et seq.* For damages related to this claim, Plaintiff and a putative subclass seek compensatory damages measured by the surrender charges incurred on policies issued to the subclass as well as punitive damages, treble damages, and attorney's fees. The putative subclass seeking damages under Count II is defined as all "Class Members who were 65 years of age or older at the time the policy was issued." To measure damages placed into controversy by this claim, Defendant calculated the surrender charges incurred on policies issued to the putative subclass, punitive damages based on these

---

[3] The Court has calculated these surrender charges to total $5,103,712.54, which Plaintiff has also noted. (*See* Doc. 23.) The figure cited in the supplemental declaration appears to be in error. For purposes of the jurisdictional threshold, this error is irrelevant as the amount is actually greater than the $5 million CAFA requirement.

surrender charges, treble damages, and attorney's fees.  Defendant calculated the surrender charges incurred from 2004 to present as follows:

| Year | Total Surrender Charges | Year | Total Surrender Charges |
|------|------------------------|------|------------------------|
| 2004 | $0 | 2011 | $244,812.55 |
| 2005 | $30,070 | 2012 | $252,501.99 |
| 2006 | $56,961.25 | 2013 | $283,171.13 |
| 2007 | $21,687.05 | 2014 | $153,538.58 |
| 2008 | $92,982.36 | 2015 | $301,215.75 |
| 2009 | $92,931 | 2016 | $90,873.65 |
| 2010 | $179,204.49 | 2017 | $64,255.91 |
| | | 2018 | $42,542.42 |
| **'04-'18** | $1,906,748.13[4] | | |

Because the surrender charges for this subclass were already included in the putative class total, Defendant does not add these surrender charges incurred by the subclass to the at-issue damage calculation but instead uses them to calculate the punitive damages potentially at issue.  Punitive damages are only available as to Count II for elder abuse; to estimate the punitive damages, Defendant adds what it characterizes as a "modest" multiplier of 1 to the subclass surrender charges – *i.e.*, a 1:1 ratio of economic damages to punitive damages resulting in $1,906,748.13 in punitive damages.  The elder abuse claim also seeks treble damages under California Welfare & Institutions Code § 3345.  Finally, the complaint prays for an award of attorney's fees pursuant to statute which Defendant calculates at 25 percent of the total damage award.  In total, Defendant maintains the amount in controversy exceeds $5.6

---

[4] The Court's calculation of these figures differs from Defendant's declaration by .03 cents: $1,906,748.10.

8

million (surrender charges and punitive damages) even without the inclusion of any attorney's fees or treble damages.

### 3. Plaintiff's Argument

Plaintiff takes issue with Defendant's calculations of damages arguing they are unrealistic, unjustified, and detached from any evidence. Specifically, Plaintiff contends the total surrender charges should not include any year's charges prior to 2011, and maintains Defendant has improperly and without any factual or evidentiary basis included all surrender charges from 2004. Plaintiff asserts there is no evidence any policies issued before 2011 were defective, so there is no evidentiary basis to calculate surrender charges since 2004. Plaintiff argues the surrender charges should be calculated from 2011 to present because this is the only date range that is supported by any evidence – his policy.

### 4. The Amount in Controversy Exceeds $5 Million

#### a. Compensatory Damages: Surrender Charges

In estimating the amount in controversy, Defendant is not required to make a prospective assessment of its own liability, or research, state, and prove Plaintiff's claim for damages. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1147-48 (C.D. Cal. 2010). Rather, Defendant is required to make a reasonable estimate of the aggregate amount of damages put at issue by the complaint while presuming the allegations of the complaint are true and that Plaintiff and the putative class will recover the requested damages on every claim. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). Defendant's estimate of surrender charges put at issue by the complaint is reasonable and shows by a preponderance of the evidence that more than $5 million is in controversy.

Although, relevant statutes of limitation are taken into account when calculating the amount in controversy, *Riggins v. Riggins*, 415 F.2d 1259, 1261-62 (9th Cir. 1969), the putative class period here is extended due to Plaintiff's tolling allegations – which neither party disputes. Defendant's chain of reasoning for selecting 2004 to present as a potential class period is reasonable and is supported by

9

allegations in the complaint and the supplemental declaration of Seamster. *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in-controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable."). Plaintiff's allegations regarding the lack of compliant notice in Defendant's insurance policies are broad, without any equivocation: Plaintiff expressly alleges that "none" of Defendant's insurance policies sold to the putative class contain the required notices. (Cmplt., ¶ 2 ("Defendants have standard, uniform contracts that their sales agents are required to use, none of which contain the disclosures required by California law.").) Further, Plaintiff claims *none* of the putative class members are subject to the relevant statutes of limitations due to tolling under the discovery rule. Thus, Defendant's calculations of surrender charges dating from 2004 is adequately supported by the allegations of the complaint.

Moreover, while Plaintiff argues Defendant has no evidence that allegedly notice-deficient policies were issued prior to 2011, Defendant has submitted evidence that it has sold policies to the putative class since at least 2004 by virtue of surrender charges incurred on policies since that time. Because the version of the statutes relevant to Plaintiff's insurance policy became effective in 2004, coupled with Plaintiff's allegation that none of Defendant's policies issued to the putative class have complied with those statutory notice requirements, Defendant's premising of its damage calculation on surrender charges since 2004 is reasonable and adequately supported. *Ibarra*, 775 F.3d at 1197 ("a damages assessment may require a chain of reasoning that includes assumptions . . . those assumptions cannot be pulled from thin air but need some reasonable ground underlying them").

The surrender charges incurred on policies issued to the putative class since 2004 on Count I total $5,103,712.54.[5]

---

[5] The Court could conclude its analysis at this point because the surrender charges exceed the CAFA jurisdictional threshold. However, because of the apparent mistake in calculating these surrender charges, Defendant maintains the surrender charges total $4,187,985.85. (Doc., 22, p. 3.) Thus, the Court considers the other damage calculations Defendant has presented.

### b. Punitive Damage

Courts may consider punitive damages in determining the amount in controversy if such damages are recoverable under the applicable law. *Bell v. Preferred Life Assur. Soc. of Montgomery, Ala.*, 320 U.S. 238, 240 (1943); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Establishing the amount of punitive damages that may be included in the amount-in-controversy calculation requires submission of some evidence that the estimated ratio of punitive to economic/compensatory damages is reasonable. *Burk v. Medical Savings Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004). This is generally achieved by presenting jury verdicts in analogous cases. *Id.*; *see also Network Industries, Inc. v. Aktiengesellschaft*, No. 11-cv-00049-DMS (BLM), 2011 WL 2182606, at * 3 (S.D. Cal. June 6, 2011); *Simmons v. PCR Technology,* 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002).

Plaintiff seeks punitive damages in an unspecified amount pursuant to Cal. Civ. Code § 3294 and Cal. Welfare & Inst. Code § 15657.5(b). Defendant's opposition points out that a modest ratio of 1:1 between compensatory/economic and punitive damages would result in an amount in controversy that exceeds $5 million in this case. The problem, however, is that Defendant submits no evidence that a 1:1 multiplier or ratio is reasonable in this case. Defendant offers no analogous cases where *any* amount of punitive damages has been awarded. Where punitive damages are included in the amount-in-controversy calculation, there must be some evidence to support the amount of punitive damages estimated is reasonable. *Burk*, 348 F. Supp. 2d at 1069. One district court has suggested the Ninth Circuit's decision in *Guglielmino* indicates that a 1:1 ratio of punitive to compensatory damages is a "conservative" estimate, and proceeded to add punitive damages to the amount in controversy calculation at a 1:1 value. *Baylor v. Zipcar, Inc.* No. 14-cv-02483-THE, 2015 WL 4931756, at *9 (N.D. Cal., Aug. 18, 2015) (citing *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, (9th Cir. 2007) (noting district court calculated punitive damages "'conservatively estimated' at a 1:1 ratio to economic damages")). This Court is not persuaded by *Baylor*'s citation and reasoning. In *Guglielmino*, the district court had concluded a 1:1 ratio of punitive to compensatory damages was "conservative" because the defendant had submitted

11

evidence of several jury verdicts in analogous *employment* cases that far exceeded a 1:1 ratio. *See*

*Guglielmino v. McKee Foods Corp.*, No. 3:05-cv-00620-VRW, Docket 20, p. 13:8-14:5 (Arp. 14, 2005).

In reviewing the district court's finding in this regard, the Ninth Circuit merely observed the district

court's finding that the 1:1 ratio was a "conservative" estimate in the face of the evidence of jury verdicts

in analogous cases. Here, there is no similar basis for the Court to conclude what amount of punitive

damages is reasonable. A review of other district court decisions in the Ninth Circuit does not indicate a

court may estimate punitive damages for inclusion in the amount in controversy without some evidence

supporting reasonableness of the estimated amount. There is no evidence that a 1:1 ratio is per se a

conservative and reasonable estimate of punitive damages in this type of case. *Network Industries, Inc.*

2011 WL 2182606, at \*3, *Burk*, 348 F. Supp. 2d at 1069; *Simmons*, 209 F. Supp. 2d at 1033; *Hayrapetyan*

*v. Am. Intern Grp.*, No. 10-cv-1590-GAF (PJWx), 2010 WL 2044521, at \*3-4 (C.D. Cal., May 18, 2010).

Plaintiff also seeks to treble any award of punitive damages under California Civil Code § 3345.

This statute allows punitive damages to be trebled where a defendant's conduct is directed to one or more

senior citizens. However, without any evidence of a reasonable amount of punitive damages, the Court

is unable to consider what amount could be trebled under California Civil Code § 3345(b). Defendant

has not furnished the Court with sufficient evidence to estimate a reasonable amount of punitive or treble

damages placed in controversy by the complaint.

c. **Attorney's Fees**

Attorney's fees may be included in the jurisdictional amount where an underlying statute

authorizes an award of attorney's fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir.

1998). "[Moreover], if the law entitles the plaintiff to future attorneys' fees in the action succeeds, then

there is no question that future [attorneys' fees] are at stake in the litigation, . . . and the defendant may

attempt to prove that future attorneys' fees should be included in the amount in controversy." *Fritsch v.*

*Swift Transp. Co. of Ariz, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (internal quotations and citation

omitted).

Plaintiff seeks attorney's fees under California Code of Civil Procedure § 1021.5, among other statutory fee-shifting provisions. Defendant maintains a reasonable award of attorney's fees in a class action suit in federal court is 25 percent of the total damage award and bases this percentage on the federal benchmark that applies to assessing the reasonableness of attorney's fees in class action settlements. *See generally Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Defendant notes that a 25-percent benchmark is reasonable when compared to cases asserting similar claims and involving the same statutes. Defendant submits a copy of a settlement approval order in a class action case involving the same statutes: there the court determined attorney's fees of 24.88% of the total settlement value were reasonable.

While the Ninth Circuit made clear in *Fritsch*, 899 F.3d at 794, that future attorney's fees are includable in calculating the jurisdictional minimum, attorney's fees awarded in the context of class action settlements are unique from the circumstances at the removal or pleading stage. District courts in this Circuit appear to be split on whether attorney's fees at the 25 percent federal benchmark for approval of class action settlement attorney's fees is a reasonable percentage for calculating the amount in controversy in class actions. As discussed by the district court in *Zhao v. Relayrides, Inc.*, No. 17-cv-04099-JCS, 2017 WL 6336082, at * 9 (N.D. Cal. Dec. 12, 2017), at the settlement stage a court assesses reasonableness of the fee award in a case that is often close to conclusion, where some amount of discovery has taken place and the settlement fund amount has been negotiated. The benchmark percentage is then almost always cross-checked with a lodestar. At the pleading stage, the court does not have any of this information making it a less reliable method of estimating attorney's fees. Other district courts, however, have accepted the federal benchmark percentage alone as a reasonable estimate of the amount placed into controversy where attorney's fees are sought in class action complaints. *See, e.g., Hughes v. Fosdick*, 106 F. Supp. 3d 1078, 1083 (N.D. Cal. 2015).

While *Zhao* persuasively questions the reasonableness of using the federal benchmark percentage for attorney's fees in class action settlements for estimating the amount of attorney's fees in controversy

at removal, Defendant here does not simply point to the federal benchmark as its sole support for estimating attorney's fees at 25 percent of the damages. Defendant cites a settlement approval order in *Rand v. American Nat'l Ins. Co.*, No. 3:09-cv-00639-SI (N.D. Cal. Sept. 22, 2011) approving attorney's fees totaling 24.88 percent of the total settlement amount using the lodestar method. (Doc. 17-1.) *Rand* involved claims very similar to those at issue here. There, the plaintiff stated UCL and financial elder abuse claims against an insurance company stemming from, among other things, the insurer's failure to make required disclosures under the Insurance Code. Although the attorney's fees in *Rand* were approved as part of a settlement, the court used the lodestar method to consider the reasonableness of the fees, which involved reviewing the hourly rates sought as well as the work billed in the case. Because of the similarity of the claims at issue in *Rand* and that court's review of the billing rates and work performed, this is convincing evidence that a 25-percent award of attorney's fees is a reasonable estimate of the amount placed into controversy by Plaintiff's request for attorney's fees. Twenty-five percent of the surrender charges under Count I ($4,187,985.85) totals $1,046,996.46.[6]

**5. Conclusion**

Adding the surrender charges ($4,187,985.85) in Count I to the attorney's fees ($1,046,996.46), the total amount in controversy is at least $5,234,982.31. As Defendant has established these amounts by a preponderance of evidence, the amount in controversy is satisfied, and Plaintiff's motion to remand is DENIED.

**B. Defendant's Motion to Dismiss is Granted in Part**

**1. Request for Judicial Notice**

Plaintiff and Defendant each filed requests for judicial notice. (Docs. 12, 13, 16). Defendant requests the Court take notice, pursuant to the incorporation by reference doctrine, of a copy of the

---

[6] Again, the Court notes the total surrender charges presented by Defendant actually total more than $5 million alone as presented in the Seamster's supplemental declaration. By the Court's calculation $5,103,712.54 is at issue with regard to the surrender charges and thus $1,275,928.14 are at issue in attorney's fees. Together these damages total more than $6.3 million dollars.

14

insurance documents delivered to Plaintiff with his life insurance policy, a complete copy of the insurance policy, and a copy of the signed delivery receipts of these documents. Defendant notes Plaintiff was issued a life insurance policy on January 11, 2011, which was delivered to him on February 2, 2011, and asserts Plaintiff refers to this policy through his complaint but only attached to the complaint three pages from the policy. Defendant maintains the Court may consider the additional documents because there is no dispute as to their accuracy, Plaintiff refers to them in the complaint repeatedly and relies on their content. (Doc. 13.)

Plaintiff argues the incorporation by reference doctrine is inappropriate here as Plaintiff's complaint refers solely to the policy jacket and the cover page of the policy where the notices of the free-look period and the surrender charges are to be placed, and Plaintiff has attached these pages to his complaint. Nothing else in the insurance policy is relevant to Plaintiff's claims. Defendant's attempt to introduce the entire insurance policy and the delivery receipt is an attempt to disprove the well-pleaded allegations in the complaint – *i.e.*, notice of the cancellation period and the surrender charges were given at other places in the insurance policy and delivery receipt documents that Plaintiff could or should have been aware. Plaintiff maintains resolution of this factual issue is not appropriate at the pleading stage.

In evaluating a 12(b)(6) motion, review is "limited to the contents of the complaint." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). However, exhibits attached to the complaint, as well as matters of public record, may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Further, a court may consider documents "on which the complaint 'necessarily relies' if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). "The Court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)). The

purpose of the incorporation by reference doctrine is to prevent plaintiffs from surviving a 12(b)(6) motion by deliberately omitting documents in their complaint. *Fraley v. Facebook*, 830 F. Supp. 2d 785, 795 (N.D. Cal. 2011).

Plaintiff does not challenge the accuracy of the documents presented by Defendant; rather, he objects to Defendant's purpose in introducing the documents. Plaintiff acknowledges in his complaint that the surrender charges and notice of the free-look period were provided in other places in the policy (which were not attached to the complaint). (Cmplt., ¶ 23 (policy contains notice of a free-look period, but incorrectly limits the period to 20 days), ¶ 24 (noting the schedule of surrender charges appears "at least seven pages" into the policy).) Plaintiff's claims do not rest on the complete lack of any notice of the free-look period or surrender charges anywhere in the policy, but instead challenge that the notices given were not placed correctly or provided in the required form on the cover page or jacket of the policy. More importantly, the full policy and delivery receipts shed no additional light on whether Plaintiff has alleged sufficient facts to invoke the tolling doctrine. And, even if Plaintiff has or could allege a sufficient basis to invoke the delayed discovery tolling doctrine, the documents Defendant offers could not override the Court's obligation to resolve any factual disputes in Plaintiff's favor at the pleading stage. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). Defendant's request for incorporation by reference of Plaintiff's insurance policy and delivery receipt documents is DENIED.

Plaintiff requests the Court take judicial notice of a bill analysis of SB 1065 by the California Senate Committee on Insurance, Claims, and Corporations dated May 19, 1993. (Doc. 16.) This is some of the legislative history in enacting California Insurance Code §§ 10127.10 and 10127.13. Courts "may take judicial notice of 'matters of public record' without converting a motion to dismiss into a motion for summary judgment." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). The matters of which a court may take judicial notice should be "generally known" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(f); *U.S. v. Camp*, 723 F.2d 741, 744 (9th Cir. 1984). Having reviewed the legislative history

submitted by Plaintiff, the Court finds it may take judicial notice of the document.  Defendant does not oppose the request, challenge the authenticity of the document, or dispute that it is a readily available public document.  Plaintiff's request for judicial notice is GRANTED.

### 2.       Statutes of Limitations

"In a federal diversity action brought under state law, the state statute of limitations controls." *Bancorp Leasing & Fin. Corp. v. Agusta Aviation Corp.*, 813 F.2d 272, 274 (9th Cir. 1987).  As this Court's jurisdiction rests on diversity of citizenship, and all Plaintiff's claims are state claims under California law, California's relevant statutes of limitations law apply.

Plaintiff contends he was unable through reasonable diligence to discover the deficient policy notices until January 2018, thus the statutes of limitations applicable to his claims were tolled and did not begin to run until then.  Defendant maintains the statutes of limitations commenced in February 2011 when Plaintiff received his whole life insurance policy, and thus the statutes of limitations on both claims expired in 2015.  Defendant argues Plaintiff has alleged no factual basis to rely on the discovery rule to toll the statutory limitation periods and that when Plaintiff received his policy in 2011, he was presented with all the facts that now form the basis of his complaint – Plaintiff cannot avoid the statutes of limitations or toll the statutes by alleging his lawyer did not review the policy until 2018.

### a.       Plaintiff's Claims Accrued in February 2011 When the Policy Was Purchased and Received

Plaintiff states a claim for violation of California's UCL and a second claim for financial elder abuse under California Welfare & Institutions Code § 15657.5, both of which are subject to a four-year statute of limitations.  Cal. Bus. & Prof. Code § 17208 (2019); Cal. Welf. & Inst. Code § 15657.7 (2019).

In ordinary tort and contract actions under California law, "the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action."  *Apr. Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 826 (1983).  Financial elder abuse claims pertaining to insurance contracts have been held to accrue when the policy or contract is executed and delivered.  *Derry v. Jackson Nat'l Life*

*Ins. Co.*, No. 11-cv-0343 DOC (RNBx), 2011 WL 7110571, at * 8 (C.D. Cal., Oct. 5, 2011) (claim for financial abuse claim as a result of disclosure violations would have commenced when the plaintiffs received the defective documents). And, claims under the UCL accrue when a defendant misrepresents or omits material information regarding a product or service causing injury. *Beaver v. Tasadia Hotels*, 816 F.3d 1170, 1178 (9th Cir. 2016) (UCL claim accrues when the harm is completed). As the policy with the allegedly incorrect notices was purchased by Plaintiff in January 2011, the claims Plaintiff asserts began to accrue at that time and became precluded four years later by the statutes of limitations. Neither party disputes Plaintiff's claims are untimely under the statutes, but they dispute whether the discovery rule applies to toll the statutes.

> **b.    Complaint's Allegations are Insufficient To Support Application of the Discovery Rule to Toll the Statutes of Limitations**

"In California, the discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 391 (1999)). This discovery rule is available to toll the statute of limitations under the UCL. *Areyh v. Cannon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1196 (2013). "A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand" a motion to dismiss. *E-Fab, Inc. v. Accountants, Inc. Servs.*, 153 Cal. App. 4th 1308, 1319 (2007) (internal citations omitted); *see also Clemens*, 534 F.3d at 1024 ("A plaintiff must affirmatively excuse his failure to discover the [wrongful conduct] . . . by showing that he was not negligent in failing to make the discovery sooner and that he has no actual or presumptive knowledge of facts sufficient to put him on inquiry." (internal citation and quotation marks omitted)).

Plaintiff alleges he did not know the policy did not properly disclose the 30-day free-look period or the surrender charges until his daughter, who acts under Plaintiff's power of attorney, discovered old policy renewal notices in her father's papers. (Cmplt., 27.) Plaintiff maintains he "could not have discovered his causes of action until his daughter discovered the [Rhinehart Policy] in January 2018 and then had a lawyer determine that it did not disclose surrender charges as required by law." (Cmplt., ¶ 28.) Defendant argues these allegations are conclusory and insufficient to show either the time or manner of the discovery; more importantly, Plaintiff should have been on notice of the policy's deficiencies when the policy was delivered to him: all the facts necessary to determine whether the cover page of the policy contained the statutorily required disclosures would have been obvious on the face of the policy. Defendant argues that even if Plaintiff may not have known about any legal causes of action surrounding the disclosures, the *fact* of the allegedly deficient notices was obvious on the face of the policy at the time it was delivered to Plaintiff.

As Plaintiff notes, and is clear from the enactment of California Insurance Code §§ 10127.10 and 10127.13, placing the notice of the free-look period and the surrender charges conspicuously on the policy jacket or cover page is designed to protect Seniors from purchasing an insurance product containing conditions, penalties, or charges of which they may not otherwise notice. For some Seniors, an insurer's failure to give proper notices on the front cover or jacket of its policy in the correct typeface and form is tantamount to nondisclosure because for that individual it accomplishes the very thing the Insurance Code statutes seek to avoid: surreptitious charges or penalties contained in a lengthy document in a font and type face too difficult for some to discern. Nevertheless, not every person over the age of 60 could be considered reasonably diligent in *not* discovering the surrender charges or inconsistencies and/or inadequacies with the free-look notice inside the statutory period, even if these notices were placed somewhere other than the cover page or policy jacket or provided in the wrong typeface. People do not magically lose all their faculties to read and comprehend documents merely because they have reached the age of 60.

On the other hand, this does not mean the discovery rule is inapplicable simply because some form of the statutory notices appears in Plaintiff's policy. *See generally In re Conseco Ins. Co. Annuity Marketing & Sales Practices Litig.*, No. 05-cv-04726-RMW, 2008 WL 4544441 at *8 (N.D. Cal, Sept. 30, 2008) (discovery rule applied where plaintiff alleged he had no way of knowing his annuity had a lower initial cash surrender value because disclosures were drafted in indecipherable and opaque mathematical terms). The typeface and location of these statutory notices are consequential otherwise the California legislature would not have required Seniors be furnished with enhanced notices. There can be no bright line drawn that the discovery rule is inapplicable whenever some form of the required notices is given in the policy. *See id.*

Application of the discovery rule at the pleading stage turns on the allegation of specific facts that could support an inference that Plaintiff's delayed discovery of his injury and the facts underlying his claim was reasonable and not negligent. *E-Fab, Inc.*, 153 Cal. App. 4th at 1319. Here, there are no facts alleged about Plaintiff's inability to discover the surrender charges or the defective free-look notice other than he was 72 years old when he purchased the policy. Plaintiff's age *by itself* is not enough to support a reasonable delay in discovery. Without further details, it is also irrelevant when Plaintiff's daughter discovered the policy (other than to support an inference this is how Plaintiff himself discovered the surrender charges); nor does the date when an attorney notified Plaintiff of relevant legal causes of action support the discovery rule's application. Plaintiff's ignorance of the law cannot delay the accrual of the cause of action. *Gutierrez v. Mofid*, 39 Cal. 3d 892, 897-98 (1985) ("It is irrelevant [for purposes of the discovery rule] that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action."). The question is what specific facts about Plaintiff, his circumstances, or the policy itself rendered him unable to discover the surrender charges or suspect the free-look period was inconsistently or incorrectly stated. Whatever those specific facts may be, they will be presumed true at the pleading stage; however, without any specific facts to reasonably support a delay in discovery, there is nothing for the trier of fact to consider or weigh.

While Defendant urges the Court to dismiss the complaint with prejudice, Plaintiff shall be given a single opportunity to amend the complaint to plead facts that, if true, could allow a reasonable trier of fact to find that Plaintiff could not have, with reasonable diligence, discovered the defective notices sooner than January 2018. Plaintiff is cautioned that mere conclusory allegations that he did not know or could not have known of the policy's deficiencies are insufficient to trigger application of the discovery rule. *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807-08 (2005).

## IV. <u>CONCLUSION</u>

For the reasons set forth above, IT IS HEREBY ORDERED that:

1.    Plaintiff's Motion to Remand is DENIED;

2.    Defendant's Motion to Dismiss is GRANTED in part and DENIED in part, and Plaintiff's complaint is DISMISSED with leave to amend; and

3.    Plaintiff shall file an amended complaint within 14 days from the date of this order. If Plaintiff fails to file an amended complaint, this action will be dismissed with prejudice.

IT IS SO ORDERED.

Dated:    **January 23, 2019**          **/s/ Lawrence J. O'Neill**
                                        UNITED STATES CHIEF DISTRICT JUDGE